UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RONDALE LEE CHAPMAN,

    Petitioner,

          v.                        Civil No. 13-cv-384-JPG

UNITED STATES OF AMERICA,         Criminal No 11-cr-40031-JPG

    Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Rondale Lee Chapman's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and its supporting memorandum (Docs. 1 & 2).   The Court also addresses Chapman's motion for leave to amend his petition (Doc. 20) and his motion for free copies (Doc. 31).

On July 7, 2011, the petitioner entered an open plea of guilty to three counts of production of child pornography in violation of 18 U.S.C. § 2251(a).   On November 3, 2011, the Court sentenced the petitioner to serve a total of 480 months in prison – 300 months on Count 1 and 180 months on Counts 2 and 3, to be served concurrently with each other and consecutively to the term for Count 1.   The petitioner appealed his conviction to the United States Court of Appeals for the Seventh Circuit, which on September 20, 2012, affirmed the Court's judgment.   *See United States v. Chapman*, 694 F.3d 908 (7th Cir. 2012) (*per curiam*).   The petitioner did not seek a writ of *certiorari* from the United States Supreme Court.

## I.    § 2255 Motion

In his § 2255 motion, the petitioner raises the following claims:

I.    Ineffective assistance of counsel for failing to inform petitioner of the possibility of consecutive sentences for his three counts of conviction and for failing to provide a reasonably accurate estimate of his likely sentence before his guilty plea;

IIa.    Ineffective assistance of counsel for failing to file a motion to suppress evidence seized from the petitioner's former home, and other evidence to which the seized evidence led, based on a warrant application that contained material omissions;

IIb.    Ineffective assistance of counsel for failing to challenge the "chain of custody" of the videotape upon which the Government's case relied;

III.    Petitioner's plea was involuntary because he was unaware of the possibility of consecutive sentence terms he could receive as a consequence of pleading guilty or the fact that he would have to register as a sex offender; and

IV.    Ineffective assistance of counsel on appeal for failing to challenge the Court's compliance with Federal Rule of Criminal Procedure 11 during petitioner's guilty plea.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court determined that it was plain from the motion and the record of the prior proceedings that the petitioner was not entitled to relief on Ground IIa.   The Court ordered the Government to respond to the remaining issues.   The Government has done so (Doc. 9), and Chapman has replied to that response (Doc. 10).   Chapman also asks for leave to amend his petition to add an additional ground for relief (Doc. 20).

The Court held a hearing on the § 2255 motion on February 6, 2014, at which Chapman, who attended by telephone, and his trial counsel, Assistant Federal Public Defender Judith Kuenneke, who appeared in person, testified.

## II.    Sentencing Proceedings

Before delving into the details of the § 2255 hearing, it would be helpful to review in detail Chapman's sentencing process.   Prior to sentencing, the Presentence Investigation Report ("PSR") calculated Chapman's sentencing range using the 2010 version of the United States Sentencing Guideline Manual ("U.S.S.G.").   To determine Chapman's offense level, the PSR considered each minor victim exploited as if he or she had been contained in a separate count of

2

conviction, *see* U.S.S.G. § 2G2.1(d)(1), including victims not charged in the indictment, *id.* at App. N. 5.   Because the PSR found Chapman had exploited at least four minor victims (one in Count 1, another in Counts 2 and 3, and two others not charged in any count), it calculated Chapman's offense level as if he had been convicted of four separate counts, or four groups, the last two of which were "ghost counts" since they were not charged.   Under U.S.S.G. § 3D1.1, the offense level for each group was determined separately.   Then, under U.S.S.G. § 3D1.4, the highest adjusted offense level for any count – 38 for Count 1 or Counts 2/3 in Chapman's case – served as the foundation upon which additional points were added based on the number of additional "units" – four in Chapman's case, since he exploited four minors with adjusted offense levels within four points of each other.   This left Chapman with a combined adjusted offense level of 42.   The PSR further recommended a five-level increase under U.S.S.G. § 4B1.5(b)(1) because Chapman had engaged in a pattern of activity involving prohibited sexual conduct, and a three-level decrease under U.S.S.G. § 3E1.1(a) and (b) for timely acceptance of responsibility. This left him with a total offense level of 44, which was reduced to 43, the maximum offense level allowed by the guidelines.   Considering his criminal history category of I, this yielded a sentencing range of life in prison.   However, because Chapman was bound by the 30-year maximum sentence on each charged count, his maximum was effectively 90 years.   Because no single count could carry a 90-year punishment, the PSR recommended consecutive sentences for each count to achieve an appropriate sentence.   *See* U.S.S.G. § 5G1.2(d).

Chapman objected to the PSR's use of the "ghost counts" in calculating his offense level, to the enhancement for a pattern of prohibited sexual conduct, and to the child pornography guidelines generally.   The Government responded to Chapman's objections, requesting a 60-year sentence.

3

At the sentencing on November 3, 2011, the Court overruled Chapman's objections to the PSR's recommendations, adopted the PSR in its entirety, and, based on an offense level of 43 and criminal history category of I, sentenced Chapman to serve a total of 480 months in prison – 300 months on Count 1 and 180 months on Counts 2 and 3, to be served concurrently with each other and consecutively to the term for Count 1.

## III.   § 2255 Hearing

Chapman testified that Kuenneke met with him several times before his open plea of guilty and informed him that he could be sentenced to a total of no more than 15 years, the statutory minimum for each count, if he pled guilty to all three counts.   He also testified that she went over the sentencing guidelines with him, but he insists she did not mention the possibility that the Court could order the sentence for each count to run consecutively to the sentence for any other count. At another point in the hearing, Chapman testified that at his plea hearing he knew he might be sentenced for as many as 30 years, the statutory maximum for each count, but thought his total sentence could not be any longer than that.   He also testified that at the time of his guilty plea he did not understand the difference between concurrent and consecutive sentences because Kuenneke never explained it to him.   He further testified that he decided to file a notice of appeal because his sentence was far above what he had anticipated.   Chapman stated that if he had known his term of imprisonment on each count could have been consecutive, he would not have pled guilty.

Kuenneke testified that she met with Chapman in person at least four times before his guilty plea: on March 21, 2011, for 0.9 hours, on May 3, 2011, for about 3.5 hours, on May 17, 2011, for 1.3 hours, and on July 6, 2011, for 0.6 hours.

Kuenneke testified that at the May 3 meeting she reviewed with Chapman and explained to

4

him in plain language, paragraph by paragraph, a "sentencing letter" she had written to him setting forth his statutory sentencing range of 15 to 30 years on each count and the possibility that the Court could impose them to run consecutively – as she explained, "30 years plus 30 years plus 30 years" – to each other.   She testified that she also provided an estimate of the guideline sentencing range she thought Chapman would likely face if he did not plead guilty (either 360 months to life or life) or if he pled guilty (262 to 327 months or 292 to 365 months).   This estimate was lower than the ultimate guideline sentencing range of life that was eventually found in the PSR.   This was because Kuenneke was unaware at the time of the existence of the "ghost counts" which were not evident until the PSR was issued and which ultimately added points to Chapman's offense level under U.S.S.G. § 3D1.4.   Kuenneke also testified she informed Chapman at the May 3 meeting that he would have to register as a sex offender if he was convicted.   She testified that they also discussed a challenge to the chain of custody of an incriminating videotape and the possibility of seeking to suppress the videotape.   Kuenneke testified that on May 3, after reviewing the letter with her, Chapman decided he wanted to plead guilty.

She testified that on May 17, she informed Chapman about the investigation her office had done into the videotape with an eye toward seeking its suppression, but Chapman maintained his position that he wanted to plead guilty.   In light of this choice, Kuenneke chose not to further pursue the suppression motion.

Kuenneke stated she met with Chapman again on July 6, the day before his guilty plea, and reviewed with him the plea process as outlined in a "change of plea letter."   The documentary evidence presented by the Government is consistent with Kuenneke's testimony that she advised him about potential consecutive 15- to 30-year sentences.

The Court found Kuenneke's testimony at the February 6, 2014, hearing credible based on

5

her demeanor while testifying, the certainty with which she testified about the details of her interactions with Chapman, and the reasonableness of her testimony in light of the documentary evidence in the case.   Chapman, on the other hand, was uncertain of many specifics, and his testimony was on occasion internally inconsistent and unreasonable in light of the other evidence and the record in this case.   Additionally, the Court is well aware of the personal interest he has in testifying in support of his plea for relief, which is much greater than any personal interest Kuenneke may have in testifying to the contrary.   For all these reasons, the Court finds Kuenneke's testimony credible and the majority of Chapman's testimony incredible.   The Court further finds Kuenneke explained to Chapman and that he understood at the time of his guilty plea that the terms of imprisonment for each of the three counts charged against him could be imposed consecutively to each other.   Having made these findings, the Court proceeds to analyze Chapman's asserted grounds for § 2255 relief.

## IV.   Analysis

### A.   Ground I

In Ground I, Chapman asserts he received ineffective assistance of counsel in violation of the Sixth Amendment prior to his guilty plea.   He claims that, prior to his guilty plea, his counsel failed to inform him of the possibility that the sentences for his counts of conviction could run consecutively and that, in so doing, she failed to give him a reasonably accurate estimate of his likely sentence.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d

687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt*, 574 F.3d at 458.   The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance.   *Id.*   The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458.   Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.   *Strickland*, 466 U.S. at 689.   The Court cannot become a "Monday morning quarterback."   *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).   "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome."   *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of

counsel, to satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458. Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice."). Objective evidence can include testimonial evidence, the history of the plea negotiations showing a change of plans immediately after counsel's error, and the type of error likely to impact a plea. *Julian*, 495 F.3d at 499-500.

The Government argues that Chapman has provided insufficient evidence – other than his own self-serving statement – of prejudice from his counsel's alleged deficient performance with respect to advising him of his likely sentence.

The record is clear Chapman knew his statutory sentencing range for each count was 15 to 30 years. Chapman has provided an affidavit stating his counsel did not advise him his sentence could run consecutively, and that had he known that fact, he would not have entered the guilty plea. However, based on Kuenneke's testimony at the February 6, 2014, hearing, which the Court found credible, the evidence establishes Kuenneke adequately advised Chapman, in plain

8

language able to be understood by an uneducated person, about the statutory range for each count and that the penalties for could be imposed to run consecutively to one another.   She also provided a reasonable estimate of his potential guidelines range at the time, considering there was no indication at the time of any "ghost counts" to elevate the range further.   Thus, her performance was not deficient, and Chapman cannot satisfy the first prong of the *Strickland* test for ineffective assistance of counsel.

Even had counsel not informed Chapman that his sentences could run consecutively, Chapman suffered no prejudice because he was informed at the plea hearing that *each count* carried a 15 to 30 year sentence, and failed to object when he was later explicitly informed they could be consecutive.   It is true that the record of the plea colloquy is not explicit about the possibility of consecutive sentences.   There, the following exchange occurred while Chapman was under oath:

> THE COURT: Okay. The penalties that can be imposed upon a plea or a finding of guilty is not less than 15 years.   Is there a cap of 30 years on this?

> MS. KUENNEKE: Yes, Your Honor; each count.

> THE COURT: 30 years imprisonment, not less than five years to life supervised release, and not more than a $250,000 fine.   And there would also be $100 special assessment imposed on each count of conviction, and the effect of supervised release means that once you are released from prison, if you violate your terms of supervised release you can be revoked and sent back to prison. Do you understand that?

> MR. CHAPMAN: Yes, sir.

> THE COURT: Any questions at all with regards to the nature of the charges against you or the possible penalties? Any questions?

> MR. CHAPMAN: No, sir.

Transcript of Plea at 4-5.   Chapman also stated twice that no promises had been made to him to

9

induce him to plead guilty, *id.* at 5, 8, which would include any promises from counsel that his sentence would not exceed 15 years.

The record *after* the plea hearing, however, belies Chapman's apparent misunderstanding about the possibility of consecutive sentences.   For example, the PSR calculated Chapman's sentencing range under the Sentencing Guidelines as life in prison.   PSR at ¶ 120.   (Effectively, this was limited to a guideline range of 1080 months – 90 years – by the statutory maximum of thirty years for each of the three counts.   *See* 18 U.S.C. § 2251(e).)   Since this range was higher than the 30-year statutory maximum sentence for each count, the PSR specifically stated that "the sentence imposed on one or more of the remaining counts shall run consecutively" to the extent necessary to reach the total punishment imposed by the Court.   PSR at ¶ 121.   Chapman stated during his sentencing hearing that he had received and read a copy of the PSR, Transcript of Disposition at 2, yet Chapman did not seek to withdraw his guilty plea after reviewing the PSR. This objective evidence does not support the inference that Chapman would not have pled guilty had he known of the possibility of consecutive sentences and, on the contrary, supports the inference that that the possibility of consecutive sentence did not impact his decision to plead guilty.

The same is true for the Government's response to Chapman's objections to the PSR (Doc. 35), in which the Government asked for a 60-year sentence, and for Chapman's counsel's statements during the disposition, where she acknowledged the possibility of consecutive sentences for each count, Transcript of Disposition at 5-6 (stating sentences for each count "can be stacked to get to life"; stating the Sentencing Guidelines "basically jacked him up . . . to a life sentence").   Chapman acknowledged he had received and reviewed the Government's objections, Transcript of Disposition at 3, and he was present during his counsel's acknowledgement of the

10

Court's ability to stack Chapman's sentences for the three counts, yet he did not object or ask to withdraw his plea.   Again, this suggests whether the sentences could run consecutively was not a decisive factor in his decision to plead guilty.

The Court is given pause because it appears that Chapman may not have received a benefit from pleading guilty.   The PSR calculated his offense level at 44 – effectively 43, since that is the highest offense level allowed – even including a 3-point reduction for acceptance of responsibility, yielding a guideline sentencing range of life.   Had Chapman been convicted by a jury, his offense level without the acceptance of responsibility reduction would have been 47 – also effectively 43 – with the same guideline sentencing range.   In his situation, a reasonable person might have chosen to roll the dice by going to trial in the hopes of an acquittal rather than facing the identical sentencing range after a guilty plea.   Upon closer inspection, however, it appears that Chapman did have a chance to receive a benefit from pleading guilty if the "ghost counts" – which were not apparent at the time of Kuenneke's advice regarding the plea – had not existed or if the Court had sustained Chapman's "ghost count" and pattern of activity objections.   If the Court had ruled in Chapman's favor on those issues or there had not been "ghost counts," the 3-point acceptance of responsibility reduction could have taken him to an offense level lower than the offense level that would have applied if Chapman had been convicted by a jury and the Court had accepted Chapman's arguments.   The lower ranges would have given the Court a different frame of reference from which to fashion an appropriate sentence.   However, the "ghost counts" existed, and the Court did not accept Chapman's arguments, so his risk did not pay off.

For these reasons, the Court finds Kuenneke was not deficient in her advice to Chapman about the potential sentence he faced and Chapman suffered no prejudice from Kuenneke's advice. He is not entitled to relief under § 2255 on this basis.

11

B.     Ground IIb

In Ground IIb, Chapman asserts he received ineffective assistance of counsel in violation of the Sixth Amendment when Kuenneke failed to challenge the "chain of custody" of the videotape showing Chapman having sex with minors or minors having sex with each other at Chapman's residence.   He complains that the tape was first obtained by theft from his residence and then passed through several hands before landing with law enforcement.   The Government disagrees.

Counsel was not deficient for failing to challenge the "chain of custody" of the videotape in question.   Defense counsel is not deficient for failing to make a frivolous or losing argument. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).   Performance is also adequate if an attorney makes a "reasonable investigations or . . . a reasonable decision that makes particular investigations unnecessary."   *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *accord Warren*, 712 F.3d at 1100.

The Court has already rejected in its order of May 16, 2013, any challenge to counsel's failure to seek suppression of videotapes seized from Chapman's home based on the inadequacy of the complaint in support of the search warrant.   The February 6, 2014, hearing revealed that counsel conducted a preliminary investigation into a challenge to the original stolen videotape that served as a basis for the warrant, but then chose not to pursue the matter further once Chapman definitively decided he wanted to plead guilty rather than go to trial.   A guilty plea rendered a challenge to the evidence unnecessary since Chapman wanted to admit to the crime.   Counsel's decision not to further pursue a challenge to the tape was reasonable in light of Chapman's instructions that he wanted to plead guilty.

12

Furthermore, there was little chance that a "chain of custody" argument would have succeeded.   As discussed in the Court's May 16, 2013, order, the tape was obtained by a private party and turned over to law enforcement.   There is no allegation or indication that law enforcement did not maintain a continuous chain of custody since receiving the videotape from the private party or, even if it had not had continuous custody, that the videotape could not have been authenticated by witnesses.   Additionally, Chapman admitted in a post-arrest statement and during his plea colloquy that he made the videotape.

In light of these circumstances, counsel's performance was within the realm of professionally competent assistance and was not constitutionally deficient.   Furthermore, Chapman suffered no prejudice from counsel's failure to make an unnecessary and losing argument.   Ground IIb provides no basis for relief under § 2255.

C.   <u>Ground III</u>

In Ground III, Chapman claims his plea was involuntary, and thus in violation of his due process rights, because he was not aware of the possibility of consecutive sentence terms or the fact that he would have to register as a sex offender.

In order to comply with due process guarantees, a plea must be knowing and voluntary, that is, it must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant."   *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *accord Parke v. Raley*, 506 U.S. 20, 28-29 (1992); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *McCarthy v. United States,* 394 U.S. 459, 466 (1969).   A plea is considered voluntary and intelligent if, considering all the relevant circumstances, the defendant had full awareness of the direct consequences of his plea, notice of the nature of the charge against him, and an understanding of the law in relation to the facts.   *Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013) (citing *Virsnieks v. Smith*, 521

13

F.3d 707, 714-15 (7th Cir. 2008)).   It is the defendant's burden to prove his plea violated due process.   *Warren*, 712 F.3d at 1102.

With respect to Chapman's assertion that he did not know his the sentences for each could run consecutively, the Court has already determined he was fully informed by competently performing counsel of this fact prior to his guilty plea.   Further, the Court correctly informed him that he was subject to a 30-year maximum sentence *on each count*.   Thus, Chapman had full awareness of this direct consequence from his counsel and from the Court when he entered his plea.

With respect to Chapman's assertion that he did not know he would have to register as a sex offender as a consequence of his guilty plea, such a requirement may not be a direct consequence of a guilty plea of which a defendant must be aware before he is able to knowingly and intelligently plead guilty.   Direct consequences include the maximum length of a defendant's potential sentence, *Dalton v. Battaglia,* 402 F.3d 729, 733 (7th Cir. 2005), and the likelihood of deportation, *Padilla v. Kentucky*, 559 U.S. 356 (2010), but do not include the possibility that a conviction may be later used to enhance a federal conviction, *United States v. Reeves*, 695 F.3d 637 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 1606 (2013).   Nevertheless, even if it is the kind of consequence of which the defendant must be aware before his plea can be deemed voluntary, the credible evidence at the hearing shows Chapman's counsel advised him in their May 3, 2011, meeting that if he was convicted he would have to register as a sex offender.   Thus, Chapman had full awareness of this fact when he entered his guilty plea.

For the foregoing reasons, Chapman's guilty plea was not involuntary and did not violate his due process rights.   Relief under § 2255 is not warranted on this basis.

D.    <u>Ground IV</u>

In Ground IV, Chapman argues his plea colloquy did not comply with Rule 11 because the Court failed to tally up the possible maximum sentences for each count and give him a total possible maximum for the entire case – 90 years.   The Government argues the Rule 11 plea colloquy was sufficient and therefore was not a significant argument for appeal.   The Government also argues that the Court complied with Rule 11 in the plea colloquy and that any failure to comply with Rule 11 typically is not the kind of legal error a § 2255 motion is designed to remedy.

To the extent this ground raises constitutional arguments under the Sixth Amendment right to effective assistance of counsel at the trial court level and the Fifth Amendment right to due process, those arguments have been addressed earlier in this order.

To the extent Ground IV raises a statutory issue based on non-compliance with a federal rule, it is not cognizable in this proceeding.   A defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

To the extent Chapman asserts his counsel was constitutionally ineffective on appeal for failing to raise the issue of non-compliance with Rule 11, the Court rejects that argument. Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).   Counsel is only deficient if he "fails to appeal an issue that is both obvious and clearly stronger than one that was raised."   *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of

15

the appeal would have been different."   *Suggs*, 513 F.3d at 678.

Here, the argument that the Rule 11 colloquy was fatally flawed because the Court did not add up the total of the three 30-year maximum terms of imprisonment for each count and advise Chapman of that total amount is a weak appellate argument.   It is definitely not stronger than the arguments counsel made on appeal:   that the Court failed to adequately consider Chapman's mitigation arguments and failed to adequately explain its choice of sentence.   The Court advised Chapman that he faced a 15- to 30-year sentence on each count, which was all Rule 11 required the Court to do.   *See* Fed. R. Crim. P. 11(b)(1)(H) & (I).   Counsel was not deficient for failing to raise this argument on appeal.   Nor did Chapman suffer any prejudice as a result; there is no reasonable probability that the Court would have overturned Chapman's conviction on this basis.

**V       Motion for Leave to Amend (Doc. 20)**

The Court further denies Chapman's motion for leave to amend his § 2255 motion to add an argument that Kuenneke was ineffective for failing to obtain a sex offender evaluation to support an argument that he was at a low risk for recidivism, which would be relevant to the need to protect the public from further crimes by the defendant, one of the sentencing factors.   *See* 18 U.S.C. § 3553(a)(2)(C).

Because the time for amendment as a matter of right has passed, whether Chapman should be allowed to amend his complaint is governed by Federal Rule of Civil Procedure 15(a)(2).   Rule 15(a)(2) provides that a plaintiff may amend his pleading only with the opposing parties' written consent, which the plaintiff has not obtained, or leave of court, which the Court should freely give when justice requires.   Although the text of the rule has changed in recent years, the rule still "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities."   *McCarthy v. Painewebber, Inc.*, 127 F.R.D. 130, 132 (N.D. Ill. 1989);   *see*

16

*Diersen v. Chicago Car Exch.*, 110 F.3d 481, 489 (7th Cir. 1997); *Woods v. Indiana Univ.-Purdue Univ.*, 996 F.2d 880, 883 (7th Cir. 1993). Generally, the decision whether to grant a party leave to amend the pleadings is a matter left to the discretion of the district court. *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 480 (7th Cir. 1997); *Sanders v. Venture Stores*, 56 F.3d 771, 773 (7th Cir. 1995). A court should allow amendment of a pleading except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)).

The amendment Chapman seeks to make would be futile. His theory stems from the fact that, on direct appeal, the Court of Appeals for the Seventh Circuit found that there was insufficient evidence to support Kuenneke's argument at sentencing that Chapman was at low risk of reoffending. The Court of Appeals specifically noted that there was no evidence linking Chapman's specific characteristics and circumstances with a low recidivism rate. *United States v. Chapman*, 694 F.3d 908, 914-15 (7th Cir. 2012) (*per curiam*). He believes Kuenneke was deficient for failing to obtain a sex offender evaluation, which he believes would have demonstrated he was at a low risk of reoffending.

Counsel was not deficient for failing to obtain such a report. She explained at the February 6, 2014, hearing that she made a conscious decision not to obtain a report because, based on her past experience, she believed the report would not have been helpful to Chapman. She testified that Chapman's situation did not have the characteristics that usually indicate a positive evaluation would result and that, in Chapman's particular case, she thought her other, more general

17

arguments at sentencing would be more likely to succeed.   Counsel's performance was well within the range of reasonably competence and was not constitutionally deficient.

Because the argument Chapman seeks to add to this case would not be successful, the Court will deny Chapman's motion to amend (Doc. 20).

## VI.   Motion for Copies (Doc. 31)

Chapman also asks the Court for the transcript of the February 6, 2014, hearing to be prepared for him free of charge due to his indigency.   He states that he needs these transcripts to appeal the judgment in this case.   Fees for such transcripts shall be paid by the United States "if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal."   28 U.S.C. §953(f). However, there is no pending appeal at this moment.   The Court of Appeals has dismissed without prejudice the appeal initiated by a February 4, 2014, notice of appeal, which Chapman prematurely filed prior to entry of judgment (Doc. 33).   For this reason, the Court will deny Chapman's motion without prejudice.   He may reapply for a transcript if he files a new notice of appeal following entry of judgment in this case.

## VII.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004)*; Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have

18

been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").   For the reasons stated in this order, the Court finds that Chapman has not made such a showing and, accordingly, declines to issue a certificate of appealability.

**VIII.   Conclusion**

      For the foregoing reasons and those stated in the Court's May 16, 2013, order (Doc. 3), the Court:

- **DENIES** Chapman's motion under 28 U.S.C § 2255 (Doc. 1);

- **DENIES** Chapman's motion for leave to amend his petition (Doc. 20);

- **DENIES without prejudice** Chapman's motion for free copies (Doc. 31);

- **DECLINES** to issue a certificate of appealability; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: August 8, 2014**

                         s/J. Phil Gilbert
                         **J. PHIL GILBERT**
                         **DISTRICT JUDGE**